IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-02538-PAB

DAVID GORDON,

     Petitioner,

v.

WARDEN ARELLANO, Warden, and
JOHN SUTHERS, Attorney General of the State of Colorado,

     Respondents.

---

ORDER ON PETITION FOR HABEAS CORPUS

---

     This matter comes before the Court on Petitioner's Amended Application for a
Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 17)[1], which the
Respondents answered (Docket No. 26).[2]  Petitioner filed no traverse.  Having
considered the same, along with the pertinent portions of the state court record (Docket
No. 29), the Court concludes that the Petition should be denied.

I.     Background

     On April 13, 1999, Petitioner was charged in Boulder County District Court (the
"trial court") with one count of murder in the first degree and one count of carrying a

---

     [1]Because Petitioner appears *pro se*, the Court construes his filings liberally.  *See Haines
v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, the Court does not serve as his advocate.
*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

     [2]The Respondents also filed a Supplemental Pre-Answer Response which contains
many of the exhibits to which they cite in their Answer (Doc. # 19).

concealed weapon. The charges stemmed from allegations that Petitioner murdered

his girlfriend, Angela Foulks. The following is a factual summary set forth by the

Colorado Court of Appeals ("CCA") on Petitioner's direct appeal:

> In March 1998, police discovered the dead body of defendant's girlfriend
> lying in a bed in the house where she had lived with defendant. She had
> been shot four times in the head - once near the right ear and three times
> in and about the left eye. Two different guns had been used to shoot her,
> a derringer and a rifle. A blanket covered part of her body, and the
> blanket had a bullet hole that appeared to match up to the ear wound.
> Defendant's relationship with his girlfriend had been deteriorating for
> some time, and there was evidence that the girlfriend had wanted to
> separate from defendant. . . . At trial, defendant testified that his girlfriend
> was depressed and using drugs. He admitted he shot her the three times
> in and about the eye, but only after she shot herself near her right ear.
> According to defendant, he had been elsewhere in the house when he
> heard the gunshot, and he had no idea whether she intentionally or
> accidentally shot herself. He related that, in order to put her out of her
> misery, he shot her in the face once with a derringer he claimed was lying
> next to her and twice with a rifle he obtained from another room.

See People v. Gordon, 32 P.3d 575, 577 (Colo. App. 2001); see also Supp. Pre-Answer

Resp. at Ex. D.

On July 11, 1998, Petitioner filed a motion to suppress evidence and statements

elicited by the police subsequent to his arrest. At a motions hearing on October 1,

1998, the trial court suppressed two of the statements, but ruled that the remainder of

the statements were admissible.

After a five-day jury trial, Petitioner was convicted of first degree murder. On

January 19, 1999, the trial court sentenced Petitioner to life imprisonment without the

possibility of parole.

Petitioner filed his direct appeal with the CCA on March 13, 2000, raising the

following issues: (1) the trial court erred in refusing to instruct the jury on the

substantive offense of aided-suicide manslaughter; (2) the trial court erred in rejecting Petitioner's tendered theory of the case instruction; (3) the trial court erred in admitting Petitioner's post-arrest statements to the police; (4) the trial court erred in permitting the prosecutor to elicit testimony from Petitioner regarding his decision to exercise his right to counsel; (5) the prosecution repeatedly made improper comments during closing and denied Petitioner his right to fair trial by misstating the evidence; and (6) the cumulative effect of prosecutorial misconduct during Petitioner's cross-examination and during closing argument denied Petitioner his right to a fair trial.  The CCA denied Petitioner's claims and affirmed his conviction on March 8, 2007.  *See Gordon*, 32 P.3d at 577-78. Petitioner filed a petition for writ of certiorari in the Colorado Supreme Court (CSC), which was denied on October 15, 2001.  Supp. Pre-Answer Resp. at Ex. H.

On October 15, 2002, Petitioner filed, through counsel, a motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(c).  Petitioner's post-conviction counsel requested that a hearing on the motion be delayed until he could obtain expert witnesses to testify.  After granting several motions to continue the hearing, the trial court conducted a Rule 35(c) hearing on July 25, 2005.  The trial court subsequently denied the Rule 35(c) motion by order dated May 17, 2006.  Supp. Pre-Answer Resp. at Ex. K.

Petitioner appealed to the CCA, and on April 24, 2008, the CCA affirmed the trial court in *People v. Gordon*, No. 06CA1295 (Colo. App. April 24, 2008) (unpublished decision).  Petitioner sought certiorari review in the CSC, which was denied on August 18, 2008.  Supp. Pre-Answer Resp. at Ex. R.

Petitioner then filed instant amended application[3] for habeas corpus on February 17, 2009, arguing that: (1) the trial court erred in refusing to instruct the jury on the substantive offense of aided-suicide manslaughter; (2) the trial court erred in rejecting Petitioner's tendered theory of the case instruction; (3) the trial court erred in admitting Petitioner's post-arrest statement to the police; (4) the trial court erred in permitting the prosecutor to elicit testimony from Petitioner regarding his decision to exercise his right to counsel; (5) the prosecution repeatedly made improper comments during closing and denied Petitioner his right to fair trial by misstating the evidence; (6) the cumulative effect of the prosecutorial misconduct denied Petitioner his right to a fair trial; and (7) Petitioner received ineffective assistance of trial counsel.

On December 2, 2008, Magistrate Judge Boland ordered the Respondents to file a pre-answer response limited to addressing the issues of timeliness and/or exhaustion of state court remedies. Respondents filed their pre-answer response on January 13, 2009, and a supplemental pre-answer response on February 27, 2009. Respondents asserted that Petitioner had failed to exhaust several of his claims in the state court, and that these claims were procedurally defaulted. Petitioner did not file a reply.

On June 4, 2009, Senior Judge Zita L. Weinshienk entered an order dismissing Petitioner's first claim as procedurally defaulted. Nonetheless, finding that the remainder of Petitioner's claims had been exhausted in the state courts, she ordered Claims Two through Seven drawn to a district judge and to a magistrate judge.

---

[3]Petitioner's original Application was received by the Court on November 7, 2008. On January 16, 2009, Magistrate Judge Boland ordered Petitioner to file an Amended Application, which was received by the Court on February 17, 2009.

II.     Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review.  *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)).  Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) of Title 28 provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id*.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owes deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [an] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims." *Id*.

III.    Discussion

As a preliminary matter, Respondents do not challenge the timeliness of the Application under the one-year limitation period set forth in 28 U.S.C. § 2244(d). However, Respondents argue that Petitioner failed to exhaust claim two in the state court and that this claim is now procedurally defaulted.

1.  Law of the Case Doctrine

In his second claim, Petitioner asserts that the trial court violated his right to due process and to trial by a jury by rejecting his theory of the case instruction. Amended Application at 7. As previously set forth, Respondents have submitted a pre-answer response, and a supplemental pre-answer response. In those responses, Respondents similarly raised the argument that claim two was procedurally defaulted because Petitioner failed to raise it as a federal constitutional issue in the state courts. After carefully considering this argument, on June 4, 2009, Senior Judge Weinshienk determined that Petitioner had presented claim two to the state courts as a federal claim and therefore that the claim was exhausted. *See* Order to Draw in Part and to Dismiss in Part (Docket No. 22 at 5-6).

Respondents again raise the exhaustion and procedural default arguments previously briefed in the pre-answer response and supplemental pre-answer response. The Court, however, concludes that Senior Judge Weinshienk's exhaustion determination is binding here, providing the law of the case. "The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The Tenth Circuit has recognized that the law of the case doctrine "applies to all issues that were previously decided, whether explicitly or by implication." *Sparks v. Rittenhouse*, 314 Fed. Appx. 104, 108 (10th Cir. Sept. 16, 2008) (unpublished decision) (citing *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)). The courts are authorized to depart from the law of the case doctrine only

"(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009) (internal quotation marks omitted).

In her June 4 Order, Senior Judge Weinshienk explicitly concluded that Petitioner had presented his second claim to the state courts as a federal constitutional one and, therefore, that this claim was exhausted. *See* Order to Draw in Part and to Dismiss in Part (Doc. # 22) at 5-6. Although Respondents have reasserted the defenses of exhaustion and procedural default, they simply restate the facts and argument previously presented on this issue. Further, while Respondents provide some additional argument, it is merely an extension of the legal arguments considered and rejected by Senior Judge Weinshienk. Respondents do not demonstrate any of the three grounds that would authorize the Court to depart from the law of the case doctrine, *see Clark*, 590 F.3d at 1149, and therefore the Court finds no basis to revisit their defense of procedural default. Accordingly, the Court will address claim two on its merits.

2. The Merits of Petitioner's Claims

a. Claim Two

Petitioner argues that the trial court violated his right to due process when it rejected his theory of the case instruction. Amended Application at 7. This instruction directed the jurors that, if they were not satisfied beyond a reasonable doubt that Petitioner fired the shot which caused Angela Foulks' death, they must find him not

guilty of the charged offense and all lesser included defenses. *Id.*; Supp. Pre-Answer

Resp. at Ex. A, p. 17-18.

In addressing this claim, the CCA found the following:

Here, the elements instructions explicitly listed causation as an element of
each crime. And, the generic burden of proof instructions, as well as the
elements instructions themselves, explicitly informed the jury both that: (1)
the prosecution had the burden of proving each and every element of a
crime beyond a reasonable doubt; and (2) if the jury found that the
prosecution failed to prove any one or more of the elements beyond a
reasonable doubt, it should find defendant not guilty.

Given these instruction, the trial court's refusal to focus burden of proof
consequences upon on particular element of the crime was not error.
[Citations omitted]. Similarly, the trial court did not err in refusing to
phrase the issue of causation in terms of whether defendant "fired the
shot which caused [the victim's] death." The coroner could not with any
certainty tell which wound caused the victim's death, testifying only that
the victim died as a result of multiple gunshots to the head. Rather than
allowing the jury to determine whether his shots caused the victim's death,
defendant's proffered language would have effectively required the jury to
return not guilty verdicts.

Defendant neither tendered to the trial court further instructions nor asked
the court for assistance in drafting an accurate instruction. [Citation
omitted]. In our view, the court's instructions defining the term "cause"
and otherwise referring to defendant's "not knowing that [the victim] may
have been dead," sufficed to place defendant's causation theory before
the jury for its consideration.

*Gordon*, 32 P.3d at 580.

An error in a trial proceeding must be one that implicates "fundamental fairness"

in order to constitute a due process violation. *Estelle*, 502 U.S. at 73. In the context of

jury instructions, fundamental fairness requires that a criminal defendant be provided a

meaningful opportunity to present a complete defense, and incorrect jury instructions

may divest a defendant of this opportunity. *See Mathews v. United States*, 485 U.S.

58, 63 (1988); *see also Bradley v. Duncan*, 315 F.3d 1091, 1096 (9th Cir. 2002) (finding

that a court's failure "to correctly instruct the jury on [a] defense may deprive the defendant of his due process right to present a defense."). However, federal habeas relief is available only when "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 71 (quoting *Cupp*, 414 U.S. at 147); *see also Calderon v. Coleman*, 525 U.S. 141, 145 (1998) ("a federal court may grant habeas relief based on trial error only when that error 'had substantial and injurious effect or influence in determining the jury's verdict'" (citation omitted)). The significance of the omission of a jury instruction may be evaluated by comparison with the instructions that were given. *See Henderson v. Kibbe*, 431 U.S. 145, 156 (1977). The failure to give a proffered jury instruction, moreover, "is less likely to be prejudicial than a misstatement of the law." *Id.* at 155.

Upon review of the jury instructions in this case, the Court finds that they are not "so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (internal citations omitted). During the jury instruction conference held on December 10, 1998, Petitioner requested that the trial court instruct the jury on his theory of the case as set forth in his tendered jury instruction No. 13. Supp. Pre-Answer Resp. at Ex. A, p. 28. The first paragraph of the tendered instruction provided Petitioner's theory that Ms. Foulks first shot herself, and that the remaining shots were fired by Petitioner in an impulsive manner and not knowing that Ms. Foulks was likely already dead. *Id.* The second paragraph of the tendered instruction specifically instructed the jury on Petitioner's theory that he did not cause Ms. Foulks' death because he did not fire the shot that

12

caused her death, and instructed the jury as follows, "[i]f you, the jury, are not satisfied beyond a reasonable doubt that the defendant fired the shot which caused Miss Foulks' death, you must find him Not Guilty of the charge of Murder in the First Degree and all of its lesser included defenses." *Id.* at 49. The trial court refused to submit the second paragraph of instruction No. 13 to the jury, finding that it was already "covered by the other instructions," and instead, submitted only the first paragraph for the jury's consideration. *Id.* at 29.

Having reviewed the instructions, the Court finds that the effect of the instructions was to require the prosecution to prove, beyond a reasonable doubt, that Petitioner, with intent to cause the death of a person other than himself, and after deliberation, caused the death of that person. *See* Trial Court Record, Vol. 1 at 269-79. Further, as shown above, the CCA thoroughly reviewed the instructions at issue and determined that the content of Petitioner's tendered instruction was encompassed in other jury instructions and, therefore, its omission did not deprive Petitioner of his right to have the jury instructed on his defense theory. Like the CCA, the Court finds that even absent the excluded portion of Petitioner's proffered instruction No. 13, the instructions given informed the jury of Petitioner's theory that his shots did not cause Ms. Foulks' death. Petitioner has made no showing that this alleged error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Calderon*, 525 U.S. at 145. Therefore, the Court finds that the CCA's decision was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts presented in the state court proceeding. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

13

b.  Claim Three

In his third claim, Petitioner asserts that the trial court erred by admitting a

statement made to the police after his arrest.  Amended Application at 8.  The

appellate court set forth the background for this claim as follows:

> After his arrest, defendant was immediately taken to the town hall, where
> he was advised of and asserted his rights to remain silent and to speak
> with an attorney.  Within ten minutes of his assertion of rights, defendant
> asked to use the restroom.  While there, he remarked to the deputy
> accompanying him, without any prompting by the deputy, that 'I'd really
> like to talk to you, but I think I'd be cutting my own throat.  I've got a lot of
> things to get off my chest but I think I need to talk to an attorney . . . .'

*Gordon*, 32 P.3d at 580.  Petitioner filed a pre-trial motion to suppress this statement,

and the trial court held a hearing on the motion on October 1, 1998.  At the hearing, the

trial court admitted the statement with the exception of the words "but I think I need to

talk to an attorney."  *Id.*  At trial, Detective Ainsworth, the officer to whom the statement

was made, testified that Petitioner told him, "Steve, I'd really like to talk to you on this,

but I think I would be cutting my own throat."  Supp. Pre-Answer Resp. at Ex. A, p. 33.

Detective Ainsworth did not testify that Petitioner also stated "I think I need to talk to an

attorney."  *Id.*  Petitioner now asserts that the trial court violated his Fifth Amendment

right against self-incrimination by admitting any part of this statement.  In addressing

this claim, the state appellate court found the following:

> Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16
> L.Ed.2d 694 (1966), a suspect, when confronted with the prospect of
> custodial interrogation, has Fifth Amendment rights to remain silent and to
> confer with counsel.

> If the suspect invokes those rights, the state ordinarily cannot use
> the suspect's invocation of those rights against him or her at trial.  *See*
> *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed. 91 (1976) (such use
> is fundamentally unfair, given the assurance, implicit in the *Miranda*

warnings themselves, that the suspect's silence will not be penalized);
*Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623
(1986) (silence, within the meaning of *Doyle*, encompasses request for
assistance of attorney).  Also, if the suspect invokes the right to counsel,
the police may not thereafter question the suspect in any respect until
either an attorney is present or the suspect initiates further
communications with the police.  *Edwards v. Arizona*, 451 U.S. 477, 101
S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Not every reference to an attorney invokes the right to counsel.
[Citation omitted[.  And, volunteered statements are not barred by the
Fifth Amendment. [Citation omitted].

Here, there was no impermissible use by the prosecution of
defendant's invocation of the right to counsel.  Defendant was not
invoking his Fifth Amendment right to counsel when he spoke in the
restroom with the deputy.  This right involves "the assistance of an
attorney *in dealing with custodial interrogation by the police.*"  *McNeil v.
Wisconsin*, 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158,
169 (1991).  Defendant was not in any danger of being interrogated in the
restroom, for he had already invoked his rights to silence and counsel,
and the police had broken off any attempt to interrogate him.

In the restroom, then, defendant was not requesting the assistance
of an attorney: he was initiating contact with the deputy and
spontaneously uttering a potentially incriminating statement.

Defendant argues that the statement cannot be admitted because
it explained why he had previously needed to invoke his right to counsel.
If defendant's position were accepted, suspects, after having asserted
their rights, could, at any time thereafter, volunteer whatever incriminating
statements they wished, in whatever detail they wished, and then insulate
themselves from the use of the statements simply by adding that that was
why they had previously asserted their rights.  Such a result is neither
required, nor, we think, contemplated by *Miranda v. Arizona, supra*, or its
progeny.

*Gordon*, 32 P.3d at 580.

Police must advise suspects of their *Miranda* rights prior to custodial

interrogation.  *Miranda*, 384 U.S. at 467-68.  However, *Miranda* does not bar the

admission of voluntary statements that are not made in response to police interrogation.

*Id.* at 444; *see also Pickens v. Gibson*, 206 F.3d 988, 994-95 (10th Cir. 2000) (statements obtained in violation of *Miranda* are admissible where defendant re-initiated communication).  Here, the testimony presented during the trial court's hearing on the motion to suppress demonstrated that, when Petitioner made the statement at issue, he did so spontaneously and voluntarily and not in response to any questioning by police officers.  *See* Trial Court Transcript dated October 1, 1998.  That is, the testimony demonstrated that Petitioner was not in handcuffs, was using the restroom, made the statement freely, and did not make the statement in response to questioning by the police officer.  *See id.* at 17-20.  After examining the record and the uncontested facts presented during the hearing on the motion to suppress, the Court finds that Petitioner was not being interrogated prior to making this statement.  Therefore, *Miranda* does not bar its admission into evidence.  *See Rhode Island v. Innis*, 446 U.S. 291, 300-02 (1980) (explaining that *Miranda* safeguards come into play only when a person in custody is subjected to express questioning or its functional equivalent); *see also United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993) (finding that "if a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible").  Accordingly, the Court finds and concludes that the CCA's decision was not contrary to or an unreasonable application of *Miranda.*  Therefore, Petitioner is not entitled to habeas relief on this claim.

c.  Claim Four

In his fourth claim, Petitioner asserts that the trial court erred when it permitted the prosecution "to deliberately elicit testimony from Mr. Gordon about his decision to

exercise his right to counsel, and used that evidence to expressly suggest to the jury that [Petitioner's] exercise of his constitutional right was evidence of guilt."  Amended Application at 9.  Petitioner apparently objects to the following exchange that occurred during his cross-examination:

> Q:    (By Mr. Pickering) When you were arrested by Steve Ainsworth, you said, I've got a lot to get off my chest but I'd be cutting my own throat. What did you mean by that?
> . . . .
>
> Q.    (By Mr. Pickering) What did you mean when you said, I'd be cutting my own throat?
> A.    Probably only that it would be foolish of me to talk to the police very much without first talking to an attorney.
> Q.    And that's because you knew you had committed a crime?
> A.    Well, of sorts, certainly, yes.

Trial Court Record, December 10, 1998, p. 56-57.  In addressing this claim, the state appellate court applied *Miranda* and its progeny, and evaluated the claim in terms of its previous discussion of Petitioner's voluntary statement to police.  The appellate court then found that:

> For the same reason, the prosecutor's cross-examination of defendant was not improper.  Defendant had not remained silent in the restroom, but had spontaneously made an incriminating statement indicative of his consciousness of guilt.  The prosecutor simply asked defendant what he meant, and this open-ended question did not become improper because defendant chose to answer it by making reference to an attorney.

*Gordon*, 32 P.3d at 581.

In *Doyle v. Ohio*, 426 U.S. 610 (1976), the Supreme Court held that a prosecutor deprives a criminal defendant of due process by making improper comments about the defendant's post-*Miranda* silence.  *Doyle*, 426 U.S. at 611, 619.  The Tenth Circuit has held that "[t]he state may not use a defendant's exercise of his right to remain silent to

obtain his conviction." *Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006) (quoting *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995)). The relevant inquiry here "is 'whether the language [used by the prosecutor] was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent.'" *Battenfield v. Gibson*, 236 F.3d 1215, 1225 (10th Cir. 2001) (quoting *Pickens*, 206 F.3d at 998).

In this case, the Court finds that the prosecutor's questions were not intended to generate responses that were direct or unequivocal comments as to Petitioner's invocation of his *Miranda* rights. Instead, the purpose of the question was to elicit from Petitioner whether or not he knew that he had committed a crime, or as the CCA explained it, whether he had "consciousness of guilt." *Gordon*, 32 P.3d at 581. Petitioner could have answered the question without making reference to his right to remain silent or right to an attorney, but instead Petitioner chose to refer to these rights. This choice was not coerced or mandated by the question asked by the prosecutor. The Court finds that the prosecutor's question at issue here was not "manifestly intended" nor "of such character that the jury would naturally and necessarily take it to be a comment" on Petitioner's *Miranda* rights. *Battenfield*, 236 F.3d at 1225. Accordingly, the Court finds and concludes that the CCA's decision was not contrary to or an unreasonable application of *Miranda* and *Doyle*. Therefore, Petitioner is not entitled to habeas relief on this claim.

        d.    Claim Five

In his fifth claim, Petitioner argues that the prosecutor "repeatedly made

improper comments during closing and denied [Petitioner] his right to a fair trial by misstating the evidence, and denigrating and belittling the defense theory of the case in order to suggest that defense counsel did not assert the theory of defense in good faith." Amended Application at 9. In the Amended Application, Petitioner does not identify particular statements made by the prosecution to which he objects. However, in his opening brief on direct appeal, Petitioner argued the following:

> First, the prosecutor denigrated the defense and defense counsel by alternately describing the defense theory as "insulting" to the jurors' intelligence, "ludicrous," "silly," and "nonsense." Second, the prosecutor utilized inappropriate and inflammatory hyperbole, stating, for example, that Mr. Gordon "blew" Angela's "brains out." Third, the prosecutor's references to God and suggestion that "we" as a society would achieve a new moral low if the jury found that Angela's act of shooting herself was a provoking act, was particularly egregious misconduct. . . . Finally, the prosecution engaged in pervasive and flagrant misconduct by misstating the evidence, telling the jurors that the defense theory was mere advocacy, and informing them that only the prosecution theory was supported by "evidence."

Supp. Pre-Answer Resp. at Ex. A, p. 43-44.

With regard to this claim, the CCA found the following:

> Because defendant did not object at trial to any of the prosecutor's remarks, we review them only for plain error. [Citation omitted].

> Prosecutorial misconduct in closing argument rarely constitutes plain error. [Citation omitted]. In order to qualify as such, the misconduct must be flagrantly, glaringly, or tremendously improper, . . . , and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of the conviction. [Citation omitted]. Improper closing argument rises to this level if its probable effect is a verdict based on bias and prejudice rather than on the relevant facts and applicable law. [Citation omitted].

> Here, while some of the prosecutor's remarks were inappropriate, they were not flagrantly or glaringly inappropriate. [Citation omitted]. Nor, viewed either individually or cumulatively, were they of such a nature as to seriously undermine the reliability of defendant's judgment of

conviction.

*Gordon*, 32 P.3d at 581.

Claims of prosecutorial misconduct give rise to federal habeas relief only when such misconduct either violated a specific constitutional right or "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Hamilton*, 436 F.3d at 1187. "Under *Donnelly*, habeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." *Griffin v. Workman*, 318 F. App'x 670, 672 (March 27, 2009) (unpublished decision). To determine whether a trial is rendered fundamentally unfair, the court examines the entire proceeding, "including the strength of the evidence against the petitioner . . . as well as [a]ny cautionary steps - such as instructions to the jury - offered by the court to counteract improper remarks." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006) (alteration in original) (internal quotation marks omitted). Further, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland*, 459 F.3d at 1024.

The Court has reviewed the prosecutor's closing argument, in addition to her rebuttal closing argument. *See* Trial Transcript, December 10, 1998, p. 81-93, 112-115. Like the state court, the Court finds that Petitioner has not demonstrated that the prosecutor's closing argument had the effect of preventing the jury from judging the

evidence fairly or reaching a verdict in accordance with the instructions provided. *See Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998). First, the Court notes that no contemporaneous objections were made to any of the prosecution's arguments. *See* Trial Transcript dated December 10, 1998, p. 81-93, 112-115. Second, the overwhelming evidence presented at trial, and Petitioner's own admission, demonstrated that he shot Ms. Foulks at least three times at close range in the head and face. Considering the other inculpatory evidence presented to the jury, the lack of an objection by trial counsel, and the deference the AEDPA affords to state court decisions, the Court concludes that the CCA's decision was not contrary to or an unreasonable application of *Donnelly*. *Cf. Darden*, 477 U.S. at 181 (finding no unfair trial when record showed strong evidence of guilt and fact that statements were made in response to defense counsel); *Jackson*, 143 F.3d at 1322 (finding that prosecutorial misconduct did not "fundamentally impair" the jury's ability to judge the evidence fairly when the record contained "considerable evidence" of guilt). Therefore, Petitioner is not entitled to habeas relief on this claim.

> e.    Claim Six

In his sixth claim, Petitioner asserts that the cumulative effect of the prosecution's misconduct during cross examination and closing argument violated his constitutional right to a fair trial. Amended Application at 10.

The CCA disagreed with Petitioner's contention that cumulative error denied him the right to a fair trial, finding that "[b]ecause we have already rejected defendant's argument that the prosecutor improperly elicited evidence in violated of his Fifth

Amendment right to an attorney, we also reject defendant's claim that the cumulative effect of misconduct there and in closing argument requires reversal." *Gordon*, 32 P.3d at 581 (citations omitted).

This Court must defer to the CCA's ruling "unless it constituted an unreasonable application of the cumulative-error doctrine." *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005). "Cumulative error analysis is an extension of harmless error and conduct[s] the same inquiry as for individual error, focusing on the underlying fairness of the trial." *Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003) (internal quotation marks and citation omitted). "Cumulative error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Welch v. Sirmons*, 451 F.3d 675, 710 (10th Cir. 2006) (internal quotation marks and citation omitted). However, cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors. *Moore v. Reynolds*, 153 F.3d 1086, 1115 (10th Cir. 1998). The court evaluates whether cumulative errors were harmless by determining whether a criminal defendant's substantial rights were affected. *Id.*

Petitioner does not specifically allege any cumulative errors here, other than a general reference to those raised in his Amended Application. However, the Court has found no actual errors as to any of the claims raised in the Amended Application. Because none of Petitioner's allegations amount to constitutional error, there exists no

actual error to aggregate and no prejudicial cumulative error can exist. *See Workman*

*v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003). Having reviewed the entire record, the

Court finds that the CCA's ruling did not constitute an unreasonable application of the

cumulative-error doctrine, nor was it an unreasonable determinations of the facts

presented in the state court proceeding. Accordingly, the Court finds that Petitioner is

not entitled to federal habeas relief on this claim.

        f.     Claim Seven

In his seventh claim, Petitioner argues that he was provided ineffective

assistance of trial counsel. Amended Application at 10. He asserts that counsel was

ineffective for failing to obtain a psychological evaluations of Petitioner and of the

victim. *Id.* He further asserts that "defense counsel also failed to call all of the available

witnesses for the defense, to testify as to the character, state of mind, or background

and past history of the defendant and/or victim." *Id.*

It was clearly established when Petitioner was convicted that a defendant has a

right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668

(1984). To establish that his trial counsel was ineffective, Petitioner must demonstrate

both that counsel's performance fell below an objective standard of reasonableness

and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at

687-88. In addition, "[j]udicial scrutiny of counsel's performance must be highly

deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance

falls within the range of "reasonable professional assistance." *Id.* It is Petitioner's

burden to overcome this presumption by showing that the alleged errors were not

sound strategy under the circumstances. *See id.* Under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If Petitioner fails to satisfy his burden with regard to either prong of the Strickland test, his ineffective assistance of counsel claim must be dismissed. *See id.* at 697. Conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective assistance of counsel. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Finally, ineffective assistance of counsel claims are mixed questions of law and fact. *See Strickland,* 466 U.S. at 698.

Petitioner raised claims of ineffective assistance of counsel in his Rule 35(c) motion to the trial court, and subsequent appeal to the CCA. On appeal to the CCA, Petitioner alleged that he received ineffective assistance of counsel because counsel failed to present: (a) evidence of the victim's mental state, including evidence related to her past cocaine abuse and past suicidal ideations; and (b) evidence of defendant's mental state, including evidence related to his "heat-of-passion response" and evidence of his intoxication the morning of the crime and his past history of alcoholism. Supp. Pre-Answer Resp. at Ex. L, p. 3-4. For ease of analysis, the Court has addressed Petitioner's arguments in the order and organization provided by the CCA.

　　　　　　i.　　　Failure to Call Witnesses Regarding Victim's Cocaine Use

Here, Petitioner argues that the victim had a long history of cocaine and alcohol abuse, but that defense counsel unreasonably failed to call witnesses to testify regarding the victim's drug history. *Id.* at 21-22.

In addressing this claim, the state appellate court found the following:

We first reject Gordon's argument that trial counsel was ineffective by failing "to call the witnesses she interviewed who said that decedent had a cocaine problem," which supposedly predisposed the victim to suicide, as discussed in the following section. In this argument, Gordon does not assert that counsel should have located additional witnesses knowledgeable on the subject.

Whether to call a known witness is a tactical decision, and thus is a matter within the professional judgment of the trial counsel. [citation omitted].
. . . .
When asked about witnesses regarding the victim's cocaine use, trial counsel testified:

- "My memory . . . is that we had sort of a mixed bag in terms of what we were getting back in terms of people saying there was a lot of use, there wasn't much use, sort of depending who you talked to";
- "[S]ome people would say, yes, there was using; no, there was no using. It was a lot; it wasn't very much"; and
- if a witness was someone "we talked to and didn't call" it would have been for a "tactical reason."
. . . .

The trial court found, with record support, that the jury had "significant evidence of [the victim's] drug use," noting the medical examiner's testimony that the victim's body tested positive for cocaine and a CBI chemist's testimony that a drinking straw found near the victim's body contained cocaine residue. Further, both the manager of the salon and Gordon testified about the victim's cocaine use.

We are unpersuaded by Gordon's argument that because the jury might discount his testimony regarding the victim's cocaine use based on self-interest, trial counsel was ineffective by not calling known witnesses to corroborate this testimony. To the contrary, testimony of the saloon manager, the medical examiner, and the CBI chemist already corroborated Gordon on the victim's cocaine use.

. . . .

Additionally, several of the statements by potential witnesses in the psychologist's report include hearsay, do not indicate personal knowledge, or both. [citation omitted]. Thus, whether their testimony would have been admissible at trial is unclear.

25

For these reasons, we conclude that counsel's decision not to call additional known witnesses regarding the victim's cocaine use was within the range of reasonable strategic judgment, and therefore Gordon has failed to establish ineffective assistance of counsel.

Supp. Pre-Answer Resp. at Ex. P, p. 6-12.

"Whether to raise a particular defense is one aspect of trial strategy, and informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotation marks and citation omitted). Here, Petitioner has made no showing that counsel's decision not to call additional witnesses to testify regarding the victim's cocaine use was not based on a valid strategic choice. *See Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002) (finding that defendant bears "the burden of showing that counsel's action or inaction was not based on a valid strategic choice."). Moreover, even assuming that counsel erred by not calling these witnesses, the Court finds that the Petitioner has not demonstrated that he was prejudiced by this mistake, as the testimony would have been no more than cumulative. The Tenth Circuit has held that "counsel's failure to call witnesses whose testimony would be corroborative or cumulative of evidence already presented at trial is not deemed constitutionally deficient." *Snow v. Sirmons*, 474 F.3d 693, 729 (10th Cir. 2007) (citing *Humphreys v. Gibson*, 261 F.3d 1016, 1021 (10th Cir. 2001) (cumulative evidence would not have led jury to reach a different result in sentencing phase of capital case and thus cannot provide basis for habeas relief); *Medina v. Barnes*, 71 F.3d 363, 367 (10th Cir. 1995) (additional evidence was "at most cumulative, and of limited probative value" and, as such, could not provide basis for

26

habeas relief)).  Therefore, Petitioner has made no argument that would establish "a reasonable probability that, but for" counsel's failure to call these witnesses, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  As such, the Court finds that the state court's determination that Petitioner failed to demonstrate that his counsel's performance was deficient as a result of her strategic decision not to call these witnesses did not result in a decision that was contrary to, or involved an unreasonable application of *Strickland*

      ii.      Failure to Present Testimony Regarding Victim's Suicidal Ideations

In this claim, Petitioner asserts that the victim had a history of suicidal ideation and emotional instability.  Supp. Pre-Answer Resp. at Ex. L, p. 22-24.  He argues that defense counsel was ineffective for failing to investigate whether there were witnesses available to testify regarding the victim's history of suicidal thoughts.  *Id.*

With respect to this claim, the CCA found the following:

> We next reject Gordon's argument that trial counsel was ineffective for failing to locate witnesses who might have testified concerning the victim's suicidal ideations.  He does not cast this argument in terms of counsel's failure to elicit such testimony from witnesses known to her.
> . . . .
> Gordon argues that trial counsel "had no information from other witnesses - - witnesses whom [the psychologist] readily found - - who could have readily testified to [the victim's] history of suicidal ideation and mood instabilities."  Gordon relies on the following statements made to the psychologist, as excerpted in his report:
>
> •    The second ex-husband "reported that [the victim] spoke of enlisting his assistance in killing her approximately monthly" and "reported that a subsequent husband of [the victim] had advised him that [she] had spoken of suicide and made similar statements to him during [their] marriage";
> •    One of the victim's former boyfriends "recalled an instance of her drinking and talking of killing herself by driving her

vehicle off the road";
- Gordon's former spouse "reported that [the victim] had been suicidal in the past";
- One of Gordon's ex-girlfriends "reported that [the victim] was often depressed and had spoken of suicide on one occasion";
- The current spouse of the ex-husband "reported that at the time [the victim] moved in with Gordon, she was 'a very troubled woman' who was 'at a low time in her life.'"

Trial counsel testified that she had interviewed three of these witnesses: Gordon's former spouse, his ex-girlfriend, and the victim's second ex-husband, on whom the psychologist relied heavily in describing the victim's "historical pathological adjustment."

Gordon does not show that trial counsel and her co-counsel failed to interview the remaining two witnesses. As the trial court found:

Though the court cannot conclude that trial counsel interviewed every possible witness, the defense has failed to meet its burden to show the trial counsel's investigation was deficient in some way. [Trial counsel] had some lapses in memory and could not say for certain who she did or didn't interview. Further, [the expert attorney] testified that he believed trial counsel had not interviewed certain witnesses because he could not find notes of such interviews in [trial counsel's] file. Neither of these facts establishes by a preponderance of the evidence that trial counsel failed to interview crucial witnesses.

In addition, even assuming that neither counsel interviewed these two witnesses, we conclude Gordon failed to present any evidence that either he had encouraged trial counsel to do so or trial counsel did not communicate with him. [Citations omitted].
. . . .

[H]ere, the trial court found, with record support, that trial counsel "conducted significant investigations" and "interview[ed] a large number of witnesses." The psychologist's report discloses that numerous people, including three ex-husbands, many co-workers, and residents of the small town where the crime occurred, had known the victim. [Citation omitted].

Moreover, at trial three witnesses, including Gordon, testified about the victim's mood instabilities around the time of the shooting. [Citation omitted].

Thus, we conclude that Gordon has not demonstrated that trial counsel's investigation into the victim's suicidal ideations was constitutionally deficient. Accordingly, we further conclude trial counsel was not ineffective in this regard.

Supp. Pre-Answer Resp. at Ex. P, p. 12-17.

In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Further, a petitioner who challenges his counsel's effectiveness because counsel decided not to interview a potential witness must establish the decision not to interview was unreasonable from counsel's perspective at the time the decision was made. *Anderson*, 425 F.3d at 859 (citing *Chambers v. Armontrout*, 907 F.2d 825, 828 (8th Cir. 1990)).

Here, the CCA noted that, of the five people who gave statements on this issue to Petitioner's post-conviction expert, it was clear that defense counsel had previously interviewed three. The CCA further found that Petitioner failed to demonstrate that defense counsel had actually failed to interview the remaining two witnesses; he merely demonstrated that she could not remember every witness she interviewed and that her file contained no statements from these two witnesses. Moreover, it noted that

Petitioner did not provide any evidence demonstrating that he had encouraged defense counsel to interview these witnesses.

After examining the record, the Court finds that Petitioner has failed to demonstrate with any reasonable certainty that defense counsel did not interview these two witnesses. As such, he cannot establish that defense counsel failed to make reasonable investigations in his case. Further, the Tenth Circuit has noted that "counsel cannot be faulted for failing to raise claims as to which the client has neglected to supply the essential underlying facts . . . [because] clairvoyance is not required of effective trial counsel." *United States v. Miller*, 907 F.2d 994, 999 (10th Cir. 1990) (quotations omitted). Here, the state court noted that there was an absence of evidence demonstrating that Petitioner had identified these witnesses for defense counsel to interview. Petitioner has failed to present any clear and convincing evidence to overcome the presumption of correctness that attaches to the state court's factual findings with respect to this claim.

Finally, even assuming that counsel erred in failing to interview these witnesses, the Court again finds that the Petitioner has not demonstrate that he was prejudiced by this mistake, as the additional testimony regarding the victim's mental state would have been no more than cumulative. See *Snow*, 474 F.3d at 729; *Humphreys*, 261 F.3d at 1021; *Medina*, 71 F.3d at 367. Therefore, the Court finds that the state court's conclusion that defense counsel was not ineffective with respect to her failure to interview or call these witnesses is neither contrary to nor an unreasonable application of *Strickland*.

iii.  Failure to Present Expert Testimony Regarding the Victim

Here, Petitioner asserts that his defense counsel was ineffective for failing to present expert testimony from a psychologist about the relationship between the victim's cocaine use and her increased risk of suicide.  Supp. Pre-Answer Resp. at Ex. L, p. 24-26.

With respect to this claim, the appellate court found the following:

Gordon next contends trial counsel was ineffective for failing to offer testimony such as the psychologist presented at the Crim. P. 35(c) hearing regarding the victim's increased risk of suicide.  We disagree.

Whether to present expert testimony is a strategic decision. [Citation omitted].  Trial counsel cannot be held ineffective for failing to have offered evidence that would not have been admissible at trial. [Citation omitted].
. . . .

Here, according to the psychologist's report, which was admitted into evidence and considered by the trial court: "Numerous factors were present in [the victim's] history that implicate personality instability, mood disorder, and substance abuse/dependence - - all of which would serve to increase her risk of suicide."

Nevertheless, the trial court found: (1) "Due to [the psychologist's] inability to interview various key witnesses . . .there is no way to verify [or] determine the accuracy of [his] conclusions"; and (2) "a more complete analysis could have resulted in completely opposite conclusions."  The trial court concluded that the psychologist's expert opinion on the victim's mental state was inadmissible, and thus it did not establish ineffective assistance of counsel.

We cannot say the trial court abused its discretion in this evidentiary ruling because the psychologist acknowledged:

• "[T]he unavailability (by death) of [the victim] to participate in the consultation removes an important source of self-report data and reduces the completeness of the evaluation . . .";
• "[I]t is of concern that several important third parties who could have further illuminated her history declined to participate or did not return my calls"; and

•        "The impact of the absence of information that these individuals
         might have provided is uncertain - - as it is unknown if their reports
         would have confirmed or disputed the information obtained from
         other third parties."
         . . . .

         Because Gordon rests this aspect of his ineffective assistance
claim on the psychologist's expert opinion, and we have upheld the trial
court's discretionary ruling that it would not have been admissible, our de
novo conclusion must be that Gordon has not met his burden of proving
counsel's performance was deficient for failing to present such testimony.

Supp. Pre-Answer Resp. at Ex. P, p. 17-21.

        Here, the CCA held that Petitioner's counsel was not ineffective for failing to

introduce expert testimony on the victim's state of mind, finding that any such expert

opinion would not have been admissible under Colorado Rule of Evidence 702.

Specifically, CRE 702 requires that expert testimony must be reliable to be admissible.

*See People v. Shreck*, 22 P.3d 68, 77 (Colo. 2001). However, Petitioner's post-

conviction expert admitted that several factors undermined the reliability of his opinion,

including the absence of the victim and the fact that several potential witnesses refused

to be interviewed by him. The conclusion that an expert opinion is inadmissible under

CRE 702 is a determination of state evidence law, and as such, is not appropriate for

federal habeas review. *See Estelle*, 502 U.S. at 67-68 (noting that "it is not the province

of a federal habeas court to reexamine state-court determinations on state law

questions").

        Instead, under the prejudice prong of *Strickland*, the Petitioner must establish "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*, 466 U.S. at 694. Like the appellate

court, the Court finds that the Petitioner was not prejudiced by counsel's failure to

obtain a post-mortem psychological evaluation of the victim, because, under Colorado

law, such evidence would not be admissible.  As such, the Petitioner cannot

demonstrate that he was prejudiced by this alleged mistake.  *See Rompilla v. Beard*,

545 U.S. 374, 405 (2005) (Kennedy, J., dissenting) (noting that the defendant bears the

burden of proving prejudice); *see also Strickland*, 466 U.S. at 697 ("If it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

we expect will often be so, that course should be followed.").  Accordingly, the Court

finds and concludes that the decision of the appellate court did not result in a decision

that was contrary to, or involved an unreasonable application of, *Strickland*.

>        iv.     Failure to Investigate and Present Expert Testimony Related
>                to Petitioner's Alcohol Abuse

Here, Petitioner argues that defense counsel was ineffective for failing to obtain

a psychologist to testify that Petitioner was an alcoholic and was intoxicated at the time

of the shooting.  Supp. Pre-Answer Resp. at Ex. L, p. 29-30.  He asserts that such

testimony would have served as a defense to first-degree murder, a specific intent

crime.  *Id.*

In addressing this claim, the appellate court found the following:

> Here, the trial court found: (1) trial counsel "decided as a tactical
> decision not to bring in the psychologist" as a witness and this "strategic
> decision . . . was not ineffective assistance"; (2) "If trial counsel introduced
> evidence of alcoholism, it would have undermined [Gordon's] credibility as
> a witness"; and (3) "Given trial counsel's emphasis on the importance of
> [Gordon's] testimony, it was not ineffective assistance to fail to introduce
> evidence as to [Gordon's] abuse of alcohol."

> The following testimony of trial counsel amply supports the finding
> that deciding not to bring in a psychologist was strategic:

> •       "[O]ne conversation that we had about that was whether or not [my

co-counsel] would bring in a psychologist to talk to [Gordon] and that is something that I remember talking with co-counsel about quite a bit";

• "I remember at one point having a conversation with the head of our office . . . about this issue because I wanted to get a second opinion about it. And we discussed . . . what I wanted to do here, which was to have [Gordon] testify and not to bring a psychologist in . . .";

• "I felt at the time then that it was a strategic decision not to [consult a psychologist]."

. . . .

Regardless of how a hypothetical psychologist might have advised trial counsel concerning Gordon's mental state based on his history of alcohol abuse, counsel would still have to choose between presenting such evidence and preserving Gordon's credibility, as discussed below. Gordon does not dispute that his testimony was essential to the theory of defense that after finding the victim with one purportedly self-inflicted gunshot wound, "in order put her out of her misery, he shot her in the face once with a derringer he claimed was lying next to her and twice with a rifle he obtained from another room." [Citation omitted].

Further, the record supports the trial court's finding that evidence of either intoxication at the time of the shooting or a history of alcoholism would have undermined Gordon's credibility. In so finding, the court implicitly determined that the decision not to present such testimony was strategic. [Citation omitted].

. . . .

We are also unpersuaded by Gordon's argument that trial counsel could not have made a reasonable strategic decision on introducing evidence of Gordon's mental state and alcohol abuse without having first consulted a psychologist. Gordon cites no case, nor have we found one, holding that a strategic decision not to present testimony was constitutionally deficient for failure to consult with an expert before making the decision, where, as here, trial counsel had legitimate reasons for that decision. [Citations omitted].

Supp. Pre-Answer Resp. at Ex. P, p. 21-26.

"Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot

ordinarily form the basis of a claim of ineffective assistance." *Hatch v. Oklahoma*, 58

F.3d 1447, 1459 (10th Cir. 1995) (quoting *United States v. Ortiz Oliveras*, 717 F.2d 1, 3

34

(1st Cir. 1983)).  When the Court analyzes strategic decisions there is a deference to the professional judgment of the attorney.  *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003).  This deference to an attorney's strategic trial decision will stand unless the decision itself was objectively unreasonable.  *Bullock*, 297 F.3d at 1047. Indeed, "[w]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United States v. Nguyen*, 413 F.3d 1170, 1181 (10th Cir. 2005) (citing *Bullock*, 297 F.3d at 1044).

Here, Petitioner has made no showing that trial counsel's decision to refrain from introducing expert testimony related to his alcoholism or intoxication at the time of the crime was not a matter of trial strategy.  Indeed, the trial court and the appellate court specifically found that this was a strategic decision on the part of defense counsel, and Petitioner has failed to present any clear and convincing evidence to overcome the presumption of correctness that attaches to the state courts' factual findings with respect to this claim.  It is clear from the record that defense counsel gave serious consideration to introducing expert testimony regarding Petitioner's alcoholism, but discarded this strategy after deciding that it would be damaging to Petitioner's credibility and crucial testimony at trial.  Accordingly, because the Court finds that this decision was an "adequately informed strategic choice," it necessarily follows that this decision is "virtually unchallengeable" on federal habeas review.  *Nguyen*, 413 F.3d at 1181.  As such, the Court finds that the state court's determination that counsel was not deficient as a result of her failure to obtain expert testimony with regard to Petitioner's alcohol abuse did not result in a decision that was contrary to, or an unreasonable application

of, *Strickland*.

Having considered all of Petitioner's allegations of ineffective assistance of counsel, the Court finds that Petitioner's claim of ineffective assistance of counsel should be dismissed in its entirety.

Accordingly, it is ordered:

1. Petitioner David Gordon's Amended Application For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 is denied.

2. No certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right.

2. This case is dismissed with prejudice.

DATED May 3, 2010.

BY THE COURT:

s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge